Pratt Medical
Center, Ltd.

v.

Douglas R. Meyer

July 15, 1999

Case No. CH98-379

BY JUDGE JOHN W. SCOTT, JR.

This matter comes before the Court on the Petitioner's, Pratt Medical Center, Ltd., Motion for Summary Judgment and the Respondent's, Douglas R. Meyer, Motion for Partial Summary Judgment. Both motions were the subject of written memoranda and were argued orally by respective counsel.

Motions for summary judgment are controlled by Rule 2:21, Rules of the Supreme Court of Virginia. This Rule states in pertinent part:

> If it appears from the pleadings, the orders ... if any, the admissions, if any, in the proceedings ... that the moving party is entitled to judgment, the court shall enter judgment in his favor. ... Summary judgment shall not be entered if any material fact is genuinely in dispute. No motion for summary judgment ... shall be sustained when based in whole or in part upon any discovery depositions under Rule 4:5, unless all parties to the action shall agree that such depositions may be so used.

This Court specifically finds from the pleadings, the admissions, and answers to interrogatories (with exhibits attached thereto) that there are no material facts in dispute between the parties.

*Statement of Facts*

The Respondent, Douglas R. Meyer, at all times relevant to this litigation, was a stockholder in the Pratt Medical Center, Ltd. (hereinafter referred to as "Pratt"). The Pratt Medical Center, Ltd., was a corporation organized and operated under the laws of the Commonwealth of Virginia. Pratt was operated for the purposes of providing medical services, and all of its shareholders were physicians. Dr. Meyer is a physician licensed to practice medicine in Virginia.

Pursuant to an employment contract dated October 3, 1991, Pratt employed Meyer to render professional medical services on behalf of Pratt in the medical specialty of obstetrics and gynecology. The employment contract stated that it could be terminated by either party upon ninety days notice. As a physician employee, Meyer was eligible to become a shareholder in Pratt. On or about September 1992, Meyer purchased two hundred shares of stock from Pratt at a price of $2,000 to $3,000 dollars.

On or about August 23, 1993, Meyer, along with the other shareholders, entered into a written Shareholders' Agreement made by and among Pratt and its other shareholders. The Shareholders' Agreement, among other things, contained a clause restricting the transfer of Pratt Stock and a mandatory "buy/sell" provision, which required Pratt to purchase or "redeem" such stock upon termination of a shareholder's employment. This provision states in pertinent part:

> If a Shareholder's employment with the Corporation is terminated for any reason ... the Shareholder whose employment has been terminated ... shall sell to the Corporation, and the Corporation shall purchase and redeem, all Shares held by the Terminated Shareholder in accordance with the price and settlement terms of Paragraph 2(c) and 2(d), respectively.

Paragraph 2(c) of the Shareholders' Agreement contains a provision setting forth the redemption price to be paid for stock under the buy/sell provision. It states, in pertinent part, as follows:

> The redemption price for each Share held by a Terminated Shareholder (the "Per Share Redemption Price") shall be an amount equal to the sum of (1) $15.00 plus (2) the Aggregate Adjustment Amount. The Aggregate Adjustment Amount for each Share held by a Terminated Shareholder shall be an amount equal to the product of the number of full calendar years, after calendar year 1980, for which

the Terminated Shareholder served as an employee of the Corporation multiplied by fifty cents ($0.50).

Therefore, according to the Shareholders' Agreement, every shareholder's 200 shares of stock were worth $3000.00 plus the "Aggregate Adjustment Amount" of $100.00 per year for each full calendar year of employment with Pratt.

On or about July 2, 1998, Pratt sent to Meyer, and all of its other shareholders, a notice of a special meeting of shareholders, for the purpose of considering and "voting on" a proposal from "UMPHY Health Care of Fredericksburg, Inc.," a Tennessee Corporation (hereinafter referred to as "UMPHY"). In summary, UMPHY proposed to purchase all the assets of Pratt, manage the existing medical practice, and employ the physicians currently holding shares upon their entry into individual employment contracts. Since this proposed sale included almost all of the assets of Pratt, the Notice also included, in accordance with § 13.1-732, Va. Code (1950, as amended), a statement that the shareholders had the right and were "entitled to assert dissenter's rights" with respect to the UMPHY proposal. On July 28, 1998, prior to the shareholders' meeting, Meyer delivered a letter to Pratt advising Pratt that he was exercising his "dissenter's rights" to the effect that, should Pratt accept the UMPHY proposal, he demanded to be paid the fair value of his shares. Meyer attended the shareholders' meeting and voted against the UMPHY proposal as was required in accordance with § 13.1-733, Va. Code (1950, as amended).

On August 3, 1998, Pratt advised Meyer in writing that it acknowledged the receipt of his notice of exercising his dissenter's rights and requested that Meyer complete a form and send it to a specific entity.

Meyer refused to enter into an employment contract with UMPHY. Consequently, on August 4, 1998, Pratt gave Meyer a letter terminating his employment in ninety days. Only four of the other shareholders refused to enter into employment agreements with UMPHY. This letter also attempted to value and/or redeem Meyer's stock.

On August 26, 1998, Meyer deposited his Pratt stock certificates in accordance with the "Virginia Dissenter's Rights Statute" and Pratt's letter of August 3, 1998.

By letter dated September 25, 1998, Pratt sent Meyer the information required by Virginia's Dissenter's Rights Statute (Section 13.1-737, Va. Code (1950, as amended)) and informed Meyer that the "fair value of your shares correspond with the value of the shares that the corporation is required to pay you, and you are required to accept, under the terms of the Shareholders' Agreement dated August 23, 1993." Pratt also informed Meyer that his

assertion of dissenter's rights is a violation of this covenant in the (Shareholders' Agreement); furthermore, Pratt advised Meyer that "if he believed that the redemptive value of his stock was more than $3,746.17, that he had the right to demand payment of this estimate of the fair value ..." and that the assertion of such rights should be made in writing within thirty days. On October 23, 1998, Meyer, through his attorney, advised Pratt that his demand to be compensated for the fair value of his stock was in the amount of $430,000.

On or about November 30, 1998, Meyer's employment with Pratt ended. In accordance with the terms and conditions of the Shareholders' agreement, Meyer's shares were repurchased and redeemed by Pratt. Pratt voided Meyer's shares and removed them from Pratt's stock records in December 1998. By letter dated December 17, 1998, Pratt notified Meyer that it had redeemed and voided his stock certificates. Pratt tendered a payment of approximately $3,700, representing the value of Meyer's shares under the Shareholders' Agreement.

### Opinion of the Court

A. *Does Meyer Have the Option to Exercise Shareholder's Dissenter's Rights?*

This Court has previously determined that the Shareholders' Agreement between Pratt, Meyer, and the other physicians at Pratt was a legally enforceable document, supported by consideration, and was not a violation of "public policy." (Court's decision on Meyer's Demurrer.)

Section 13.1-730, Va. Code (1950, as amended), states that:

A Shareholder is entitled to dissent from and obtain payment of the fair value of his shares in the event of, any of the following corporate actions. ...

3. Consummation of a sale or exchange of all, or substantially all, of the property of the corporation if the shareholder was entitled to vote on the sale or exchange ... provided that such dissenter's rights shall not apply in the case of (i) a sale or exchange pursuant to court order, or (ii) a sale for cash pursuant to a plan by which all or substantially all of the net proceeds of the sale will be distributed to the shareholders within one year after the date of the sale.

The record is clear that Pratt recognized Meyer's right to dissent given the wording of the notice of the shareholders' meeting. The record is also

clear that Pratt acknowledged receipt of Meyer's notice of the assertion of his shareholder's dissenter's rights.

After asserting his rights, Meyer attended the shareholders' meeting and voted against the UMPHY proposal. Shortly thereafter, Meyer refused to enter into an employment contract with UMPHY. By refusing to enter into the employment contract, Meyer guaranteed that his employment status with Pratt would soon be changed. This Court finds that it is immaterial that Pratt offered to extend Meyer's employment beyond November 30, 1998.

Pratt takes the position that Meyer, by placing himself on a one-way track toward termination and/or separation from the medical center, automatically triggered the terms and conditions of the Shareholders' Agreement with its "buy-sell" provisions. On the other hand, Meyer had the absolute right and was in fact required to vote against the UMPHY proposal as a dissenting shareholder. In fact, if Meyer had not voted against the proposal, he could not have pursued his claim as a dissenting shareholder and would have been barred from maintaining this action by Statute. (*See* § 13.1-730, Va. Code (1950, as amended), *et seq.*)

This Court does not believe that the statutory rights conferred upon Meyer as a minority shareholder were meant to be abrogated by the automatic operation of a "buy/sell" agreement that is triggered because of the very actions that the minority shareholder opposes, the purchase of the assets and the management of the medical practice by UMPHY. The law is clear that a minority shareholder cannot be compelled to participate in the extraordinary transactions of a corporation. This Court specifically finds that Meyer exercised his rights as a dissenting shareholder in accordance with § 13.1-730, Va. Code (1950, as amended), *et seq.* in a timely fashion and satisfied the criteria for the exercise of said rights in accordance with the statutory scheme. The Court further finds that the exercise of such rights is not terminated *per se* by the operation of a Shareholders' Agreement.

## B. *What is the Fair Value of Meyer's Stock?*

The record reflects that, on or about September of 1992, Meyer purchased from Pratt 200 shares of stock at an estimated cost of $2000 to $3000. On or about August 23, 1993, Meyer entered into a written Shareholders' Agreement with the other shareholders at Pratt. This agreement contained a restriction on the transfer of Pratt stock and a mandatory "buy/sell" provision. After Meyer had asserted his shareholder's dissenters' rights, Pratt advised Meyer on September 25, 1998, that the fair value of his shares was in fact the value of the shares as computed by applying the

provisions of this "buy/sell" provision. Meyer argues that the value of the shares is $430,000.

The Court notes that Pratt had a negative liquidation value as of June 30, 1998, since its liabilities exceeded its assets according to its balance sheet. If the value of Meyer's shares was computed on the basis of that balance sheet alone, Meyer's shares would be worth $0.

This Court has ruled that the Shareholders' Agreement is an enforceable contract, supported by consideration, and is not against public policy. In that contract, the parties thereto agreed in writing to establish the "fair value" of their shares. The parties to the agreement contracted to be bound by the method of computing "fair value." This agreement was entered into by Meyer after he had acquired his shares to provide a guaranteed return on investment. There is no allegation that Meyer was forced or coerced to enter into this agreement. There is nothing in law that prevents a shareholder from contractually determining the rate of return on his or her investment and thereby establishing the "fair value" of said investment at any given time.

This Court specifically finds that Meyer contractually agreed as to the method of determining the "fair value" of his shares of stock by entering into the Shareholders' Agreement. The guaranteed rate of return on the investment constitutes consideration for all the parties, including Meyer.

Meyer agreed to be governed by the provisions of the Shareholders' Agreement. The use of the agreement in determining the "fair value" of Meyer's shares in satisfaction of his dissenter's rights is fair and equitable and does not violate the statutory scheme of § 13.1-730, Va. Code (1950, as amended), *et seq.*

### Conclusion

It is therefore adjudged, ordered, and decreed that Pratt Medical Center, Ltd.'s Motion for Summary Judgment is hereby granted.